Monica Knox for Mr. Rodriguez. As the preceding argument makes clear, there is substantial confusion about how to review these cases when the California Parole Board or the governor in the preceding case deny parole to a California State-like prisoner. The two issues that are actually settled by this circuit, as much as the Attorney General may disagree with them, are that there is a liberty interest and that it requires that the due process necessary requires that evidence support the parole board or the governor's decision. Now, there's been a lot of talk today about whether evidence really has to support it or not, and I want to address that for a few minutes but preliminarily I'd like to note that there have been four published cases on California life for parole from this circuit, McQuillan, Biggs, Sass and Irons. McQuillan's a little different because it was rescission, but Sass, Irons and Biggs are all suitability, just like the cases on calendar today. And in those cases, this Court has clearly held that some evidence has to support the decision made. And so it really would take an en banc court to decide otherwise at this point, even if the AG were correct. But the Attorney General is absolutely wrong, and the problem with the Attorney General's argument is it misses two critical components. I agree that there is no United States Supreme Court case that says in California life for parole cases, the decision must be supported by substantial, by any evidence. Kennedy. Well, is there a case saying that a parole decision anywhere must be supported by some evidence? McQuillan. Well, Greenhold's, what, okay. Kennedy. A Supreme Court. McQuillan. What there is, what there is from the United States Supreme Court is many, many cases that say whenever there is a substantial liberty interest that is involved, due process protects it. Now, what the Supreme Court has said about due process is that the most elemental of due process rights is the freedom from a wholly arbitrary deprivation of liberty. A decision with no evidence to support it is, in fact, a wholly arbitrary deprivation of liberty. And in fact, the Supreme Court has said that in many contexts. The parole context this Court is used to looking at, as you mentioned, Judge Canby, looking at sufficiency arguments all the time that come from the State. Usually it's sufficiency to support a conviction. And this isn't that, and I agree, but we're used to looking at sufficiency all the time. And what the Court does is it looks at the facts, it looks at what State law required in order to find someone guilty and decides whether there's enough evidence there to support that. Doesn't reweigh the evidence. Kagan. It's because we have Jackson v. Virginia that tells us we're supposed to do that, and we don't really have Jackson in the parole context, do we? You don't have a Jackson directly in the parole context, but you Jack – Jackson was nothing more than an application of settled due process law by the Supreme Court about a decision that is not supported by evidence as a wholly arbitrary decision. The Attorney General's argument, if evidence weren't required, what it means is the parole board could find him unsuitable because he has blue eyes, whether or not he even has blue eyes. The problem here, Greenholts doesn't address this because the statute in Greenholts was very, very different. There is one ground and one ground only under the California statute that allows the board or the governor to deny parole to a life prisoner who has reached his minimal eligible parole date, and that is that he is a current threat to public safety. That is the only grounds. In Greenholts, there were multiple grounds that allowed the parole board to do that, including that his release would depreciate the seriousness of his crime or promote disrespect for the law, it would have a substantially adverse effect on institutional discipline, and many other things. So what the Supreme Court was dealing with, there wasn't whether evidence supported anything. It was dealing with procedural due process rights. What we're dealing with when we talk about evidence must support the decision is a substantive due process right, the substantive right to be free from a wholly arbitrary decision. Ginsburg. So now if we get over that hurdle and then we talk about the evidence, if we use the Biggs and Irons standard, how does your client come out under that standard in terms of the nature and circumstances of his commitment offense? Well, I would suggest to the Court that the Biggs and Irons standards are merely confusing this issue. What you have now are judges who are plotting the case they have SAS and Irons and Biggs and where does this case fit, and the other is how much time has he done. He's done more than SAS, not as much as Irons. None of that is directly responsive to the only issue this Court is supposed to be looking at, and that is whether the evidence supports a finding that he is a current threat to public safety. There could be a prisoner who has done 50 years who remains a threat to public safety, and one who's done the minimum number of seven years who is quite clearly there's no evidence to support a public, that he's a threat to public safety. And so, and there can be one, there could be a prisoner who committed a very aggravated offense, but in the ensuing years has addressed all the issues. I mean, drunk driving, the SAS case, is a good example of that. The only risk factor that Mr. SAS ever had was his alcoholism. He has addressed his alcoholism, and all the evidence was that he is absolutely in recovery, plans to continue recovery, and everybody, including the Board, believed it was genuine and sincere. He no longer has a risk factor at all. Let me ask. I don't really care about Mr. SAS, except to the extent I care, you know, personally about him and his case, but he's not here, and Mr. Rodriguez is. The one factor, in addition to the crime of commitment, that's mentioned and referenced in here has to do with he doesn't have any documented plans. And although he talks about it to his counselors, the parole board said, you know, there's no letters of support, there's no plan, there's nobody who's going to take him in and that sort of thing. Is that a legitimate basis for saying he can't get out yet? A lack of parole plans could be, in certain cases, a legitimate. I think it depends on the circumstances of the case, but it could be. The problem with this is the ‑‑ your question conflates the lack of parole plans with the lack of documentation. What the regulations talk about is that he has some realistic parole plans, and as the psychologist in this case affirmed, he had realistic parole plans. Well, am I correct in believing that the parole plans are listed as some of the plus factors, but an absence of parole plan is not listed as a negative factor? Yes, you are. And so it is only listed as a factor tending to show suitability and not the absence of them as a factor tending to show unsuitability. But even aside from that, Mr. Rodriguez had parole plans. He presented those parole plans. What he did not present was a letter from his sister saying, yes, I agree, he can come live with me. But the Court needs to understand that not only do the regulations not require that, they don't actually require a residence at all. They just require some ‑‑ they just suggest that it would be a suitability factor if he had realistic parole plans. But in the beginning of the hearing, the Board told Mr. Rodriguez, told his lawyer as they tell ‑‑ they start out every hearing saying that this decision isn't final for a 90‑day period during which it will go through review. It's now 120 days, but it goes through review. And one of the things that happens with a grant, with a grant to parole, one of the things that happens in that 90 to 120 days is the Board goes and verifies parole plans. They were free to go and verify parole plans. And if it turned out his sister said, well, that's a lie, I never told him he could live with me and he can't live with me, then they just wouldn't have affirmed the grant of parole. Mr. Rodriguez presented a viable parole plan. There's no requirement that he have documentation, and the fact that he doesn't have documentation doesn't make him a current threat. That's the kind of analysis, though, that is so critical for this Court to do, is to provide evidence that shows he's a current threat to public safety. Thank you. Emila V. Hooley, again, on behalf of the Respondent. And I don't want to be labor points that were made in the first argument. I understand the Court is aware of them because they're in the briefs as well, but there are a few points that are important to reiterate. In response to your question, Your Honor, how would Mr. Rodriguez come out under Sass and Irons? The warden's position is even under those cases, which are not clearly established Federal law, he would lose. This was his third subsequent hearing. His crime involved elements far beyond a second degree murder for which he was convicted. He enlisted the help of a fellow gang member to ambush his victim and shot him defenseless in the car three times. That strikes me as silly, when they said it's especially heinous because he was shot while sitting in a car, in no position to defend himself. Would you murder people some way or other, and the fact that he's sitting down instead of standing on the sidewalk or something, it just makes no sense to me at all? Respectfully, Your Honor, that's one of the reasons we're here in Tolliver. In this case, we're defending a district court decision that was appropriate, because questions like those are for the parole board, reviewed by the governor, and then reviewed by the State court. And unless the State court finds an unreasonable application of clearly established Supreme Court law, that ends the inquiry in the Federal courts. And in defense of the question of whether it was more egregious because he's in a car, unlike Mr. Bradford, Mr. Tolliver's victim, Mr. Rodriguez's victim was stuck in a car where he couldn't run away and was shot after being brought by an ambush. The warden would say that is more egregious. The board did, and the State courts agreed. With respect to McWilliam, Biggs, Sass and Irons as well, this Court is not bound by those cases. When there's been an intervening authority that's clearly irreconcilable with circuit precedent, this panel is free to disregard them. And we have Landrigan, we have Musladin that say the sum evidence test doesn't apply, and therefore, there was no test that the superior court and the appellate court could unreasonably apply. And I have a little trouble with that, because the Court's often an eye of the beholder as to what is intervening authority. But we don't have intervening authority that says that the sum evidence test shouldn't apply in parole cases, correct? Correct, Your Honor, but we still have Greenholtz from the past showing that there isn't a test, and then Landrigan reinforcing Musladin, which says if there – if the supreme court has not yet spoken on the specific issue, then it is improper to import a test from another context. And I – and that would be controlling and intervening. That was not considered in Irons, which was briefed long before Musladin came out. And Landrigan has made it even more clear, if it wasn't clear before from Musladin, that Federal courts should not go where the supreme court has not already paved the way. Am I correct? Let me understand, because we have several cases here, and they – it's easy to confuse them. I understand that completely, Your Honor. Are we reviewing the last reason State court decision was by the superior court? Yes, Your Honor. It was the superior court of Los Angeles. And was that in – when was that, 2003? It was April of 2003, yes, Your Honor. And am I correct that it – it seems to me it said that while it didn't agree with the parole board, that there was some evidence to support it? Yes, Your Honor, it did. It applied the some evidence test because California has indeed imported that test under the California Constitution. That's not to say it necessarily applies in the Federal context. And the court upheld the decision because the psychological evaluations were in part conflicting. And one of the reasons that was important, and it ties in as well to the parole plans, is because of the problems with substance abuse. With a lack of parole plans for substance abuse, certainly that's somebody who's going to present a higher risk of danger than someone that doesn't have a substance abuse problem. And that added an associated risk. So given the commitment offense, the lack of parole plans, and the substance abuse problems, we don't have a bigs problem, even if bigs were clearly established law, because it's not just past problems. It's a current problem with getting to grips with what you're going to do on the outside. And can I just go back to the – Mr. Rodriguez's argument that the parole plans – if you have parole plans, that you don't need documentation because it only goes to suitability, the plus side, not the negative side. Would you comment on that? I will, Your Honor, recognizing, of course, that it's a matter of State law. State law cases have found that, first of all, the guidelines are specific. They are only guidelines. They're not exclusive. The Board, the Governor, are bound to consider all relevant, reliable evidence. Someone who has adequate parole plans in place, substantiated, obviously presents a much lower risk than someone who merely says, I think I'll go live with a family member, and I'll deal with setting up substance abuse after the fact. We have a State case, Onesto, that recognized when there's an absence of a suitability factor, such as parole plans, that is relevant to the determination. But again, that puts this Court in the position of evaluating the inmate's suitability, and what this Court should be doing is evaluating the State court decision, raising his claims. I'm interested in your comment that the sum evidence test that's regularly applied by the California courts may not necessarily be the same sum evidence test that comes from Hill. Was there any connection when the California courts first adopted that, that they were taking a Federal standard, or that it was parallel to or identical to the Federal standard? It was similar, Your Honor, to the path this Court paved with its cases. The test was first articulated in Powell, and in Powell, the California Supreme Court relied on State law and then basically tried to say, we think we're on the right path, because this is like what the Federal courts have done in Hill in the disciplinary context. Powell was a rescission case, and so arguably a little different than an original parole case. So the State, which is allowed to have a higher level of protection but not a lower one, can decide to apply the sum evidence test. But that doesn't mean that the Federal courts can't apply it. But I guess if I understand your answer, it's that they haven't said they're applying a stricter test. I'm sorry? They haven't said they're applying a stricter test. They've said that it's parallel to the Federal. Is that correct? Yes, Your Honor, that's true. And this Court, again, as I believe I said in the last case, now I'm getting confused as the Court was, the sum evidence test was applied by this Court, I believe it was in Janssek, finding that because a disciplinary case would keep an inmate in prison longer and a parole decision would as well, that was a proper stretch. But the Supreme Court hasn't said that, and the Warden maintains that Greenholtz shows that that isn't a proper test because the questions are so different, adversarial, non-adversarial, retrospective, prospective, objective, subjective. The test doesn't cross those lines and isn't required under Federal law, especially whereas here Greenholtz makes clear what we have is a very minimal liberty interest. It's only a hope. These prisoners aren't sentenced to life with the guarantee that they will be paroled at some point. Their crimes are such that that contemplates they could spend the rest of their life in prison. If the Court followed down the path that the inmates are arguing in these cases and said that after time the crime is no longer relevant if the inmate is good in prison, we could have the most heinous, egregious crime imaginable. A Manson case, but if Mr. Manson goes to classes and has parole plans and has laudatory chronos, is it for this Court to decide that the crime has somehow expired? The Supreme Court says that's not for this Court to say. It's up to the States. No Supreme Court case says the State can't rely on the crime. And in this case, they didn't rely on the crime excessively. Unless the Court has questions, we'd submit this case. Thank you, Counsel. The case just argued is submitted for decision. We'll hear the next case, which is Adams v. Butler. Thank you. Thank you.
judges: Schroeder, Canby, McKeown